KATHRYN LEE BOYD, ESQ. (SBN 189496)
lboyd@srbr-law.com
DARCY R. HARRIS, ESQ. (SBN 200594)
dharris@srbr-law.com
SHERLI SHAMTOUB, ESQ. (SBN 270022)
sshamtoub@srbr-law.com
SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Boulevard, Suite 360
Los Angeles, California 90048
Phone: (323) 302-9488
Fax: (323) 931-4990

Attorneys for Plaintiff RON RAFFAELLI

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON RAFFAELLI,<br><br>Plaintiff,<br><br>vs.<br><br>GETTY IMAGES, INC.; GETTY IMAGES (US), INC.; AND DOES 1, THROUGH 10 INCLUSIVE,<br><br>Defendants. | Case No.: CV12-0563-CAS(PJWx)<br><br>**FIRST AMENDED COMPLAINT**<br>1. Copyright Infringement (Unpublished Works)<br>2. Copyright Infringement<br>3. Replevin<br>4. Conversion<br>5. Damages Under California Penal Code § 496<br>6. Declaratory Relief<br><br>**DEMAND FOR JURY TRIAL** |

RON RAFFAELLI ("Plaintiff" or "Raffaelli") hereby alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Ron Raffaelli is a world-renowned American photographer, whose images of iconic performers and classic rock musicians from the 1960s and 70s, especially his extensive work depicting Jimi Hendrix, have earned him the unofficial title of "the King of Rock and Roll Photography." Mr. Raffaelli brings this action for violation of federal copyright laws, for conversion and for the return of his photographic artwork currently in the possession of Defendants Getty Images, Inc. and Getty Images (US), Inc. (collectively "Getty Images" or "Defendants"), from which they are profiting knowing that the artwork was stolen. Mr. Raffaelli seeks to hold Getty Images accountable for its infringements of his copyrights through, among other things, the distribution, sale and public display of iconic photographic works that were stolen from the artist (the "Stolen Raffaelli Works"). Mr. Raffaelli seeks not only the return of his artwork, but damages, and a declaratory judgment of his ownership rights to the stolen property in the unlawful possession of Defendants Getty Images.

2. Getty Images apparently purchased the Stolen Raffaelli Works from the Michael Ochs Archives (hereinafter the "Archives"), which is a collection of prints and negatives, including, in part, images of iconic musicians and performers from the 1960s and 70s. The Archives' possession and use of certain photographs and/or imagery is steeped in legal controversy. Indeed, Michael Ochs, the former owner of the Archives, is notorious within the image-licensing industry for unlawfully licensing photographs and imagery without the knowledge or consent of the copyright owners.

3. Nevertheless, armed with specific information that the Archives consisted of stolen works, and in total disregard for the consequences thereof, in 2007, Getty Images purchased the Archives and thereafter commenced displaying the contents of the Archives for public sale on its website <www.gettyimages.com>.

4. In or about late 2009 or early 2010, Raffaelli discovered that the Getty Images had possession of the Stolen Raffaelli Works and was unlawfully copying, publishing,

distributing, licensing, selling and/or otherwise publicly displaying said works. Shortly thereafter, and within the applicable statutory period, Raffaelli brought this action.

## PARTIES

5. Plaintiff Ron Raffaelli is an individual residing in Kern County, Bakersfield.

6. Defendant Getty Images, Inc. is a corporation incorporated and existing under the laws of Washington, and has an office located in Los Angeles County. Getty Images regularly does or solicits business or is engaging in a persistent course of conduct in Los Angeles County, and purposefully avails itself of the privileges and protections of the laws of California.

7. Defendant Getty Images (US), Inc. is a corporation incorporated and existing under the laws of New York, and has an office located in Los Angeles County. Getty Images regularly does or solicits business or is engaging in a persistent course of conduct in Los Angeles County, and purposefully avails itself of the privileges and protections of the laws of California.

8. The true names or capacities, whether individual, corporate or otherwise, of the defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said defendants when the same have been ascertained.

9. Plaintiff is informed and believes and thereupon alleges that each of the Defendants designated herein as a "DOE" is legally responsible in some manner for the events and happenings herein alleged, and that Plaintiff's damages as alleged herein were proximately caused by such Defendants.

10. Plaintiff is informed and believes and thereon alleges that in performing the unlawful acts alleged herein, each Defendant was the agent, employee, and representative of each of the remaining Defendants, and in doing the unlawful things alleged, was acting within the course, purpose, scope and authority of such agency, employment or representation and directed, aided and abetted, authorized or ratified each and every act

and conduct alleged herein.

## JURISDICTION AND VENUE

11. This is a civil action seeking injunctive relief and damages for copyright infringement under the copyright laws of the United States, *17 U.S.C. § 101 et seq.* Accordingly, this Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. § 1331* and *28 U.S.C. § 1338(a)* and supplemental jurisdiction of the state law claims pursuant to *28 U.S.C. § 1367(a)*.

12. Venue is proper in this Judicial District under *28 U.S.C. §§ 1391(b) and (c)* and *28 U.S.C. § 1400(a)* because the claim arises in this Judicial District, the Defendants may be found and transacts business in this Judicial District, and the injury suffered by Plaintiff took place in this Judicial District. Defendants are subject to the general and specific personal jurisdiction of this Court because of its contacts with the State of California.

## BACKGROUND

13. Raffaelli is a renowned photographer, best known for his iconic photography of the late Jimi Hendrix ("Hendrix") during Hendrix's first and only American tour – The Experience Tour. Raffaelli is also known for his photographic work for album covers and posters for legendary classic rock and roll bands and artists, such as The Doors, Led Zeppelin, the Rolling Stones. Over the course of a career that has spanned four decades and includes a broad range of artistic expressions, Raffaelli has had a number of books and countless magazine spreads of his works published.

14. With respect to works at issue in this litigation, in or about 1968, Raffaelli entered into a collaborative arrangement with Jerry Goldstein ("Goldstein") and Steve Gold ("Gold") to publish Raffaelli's photographs through the "The Visual Thing." Pursuant to this collaboration, Raffaelli selected images from his pre-existing portfolio of photography and camera-ready art created solely by him, to be used in album covers, tour books and posters, which would be exclusively advertised, marketed, published and distributed by The Visual Thing.

15. In exchange for their financial backing and distribution efforts, Goldstein and Gold received a combined 85% of the profits generated from the sales of the Raffaelli's work through The Visual Thing. Raffaelli received a significantly lower share of the profits – a mere fifteen percent (15%), plus modest rent and expenses – but, Raffaelli retained all his rights, including intellectual property rights, to his photography, production materials, props and all other items used to produce his work.

16. Raffaelli had exclusive control over his creative output, from the inception of the artistic concept to the creation of the finished work. Raffaelli personally took the photography, and produced the finished "camera ready art" which went directly from Raffaelli to the appropriate printer. Indeed, Raffaelli's level of involvement and commitment to his work was such that he would often be personally present at the printer to supervise the first print. Thereafter, Raffaelli would retrieve his work from the printer and store it at his studio. A copy would be sent to The Visual Thing for the purpose of marketing and distribution. All of Raffaelli's photographs, negatives, film and finished work were stored at his private studio.

17. Raffaelli also controlled the retention and termination of his creative staff, as well as decisions regarding purchasing of supplies and materials for projects. In addition, Raffaelli purchased and personally owned all the photographic equipment necessary to run a working photography and graphic art studio.

18. Raffaelli's name was to appear on all of his work distributed by The Visual Thing as the author of the work. For instance, the Hendrix tour book, described below, attributes the photography and layout to Raffaelli.

19. In or about 1969, Raffaelli interviewed for and was selected as the personal photographer for the singer/song writer Jimi Hendrix. As a result, Raffaelli was given unbridled access to Mr. Hendrix, including the opportunity for "behind the scenes" and intimate shots of the musician. For over a year, from May 1969 to July 1970, Raffaelli traveled with and authored hundreds of photos of Mr. Hendrix and his band members,

1  including photographing Mr. Hendrix's performance at the Waikiki Shell Auditorium, in Honolulu HI on May 1969, among many others.

20. From his selection of Hendrix photography, Raffaelli created a tour book entitled, *Jimi Hendrix – Electric Church – A Visual Experience*, for publication by The Visual Thing, and selected three photographs to be produced as posters by The Visual Thing.

21. Shortly following Hendrix's American tour, Mr. Hendrix suffered an untimely death, thereby making Raffaelli's photographs of Hendrix's only American tour iconic collectables of the late musical master.

22. Following Hendrix's tour, Raffaelli continued to collaborate with The Visual Thing, and produced a number of album covers, classic rock posters and tour books of well-known and aspiring bands and musicians of the era, including Eric Clapton, Led Zeppelin, The Rolling Stones and Creedence Clearwater Revival, among many others.

23. In or about 1971, the parties had a falling out and the Visual Thing collaboration terminated.

24. Shortly after the termination of the parties' collaboration, Gold, Goldstein and a few men appeared at Raffaelli's studio and an altercation occurred. Although the police were called, Gold and Goldstein succeeded in looting Raffaelli's studio. At the time, Raffaelli believed the looted items were limited to furniture and studio equipment.

25. In or about early 2006, while in the process of inventorying his extensive body of work, Raffaelli discovered that some of his film and material were missing, including photographs of Hendrix. Raffaelli had his suspects: (1) Gold and Goldstein, or (2) Herbie Worthington ("Worthington"). Although Raffaelli had not realized it at the time, Gold and Goldstein could have stolen Raffaelli's photographic work during the altercation and ensuing looting of Raffaelli's studio when the parties terminated their Visual Thing collaboration back in 1971. Raffaelli had lost contact with Gold or Goldstein since about 1971 and, therefore, could not confirm his suspicions.

26. As to the second suspect, Worthington, Raffaelli had worked with him in the early 1970s, training him as a musician photographer. During this period, Worthington had

1  unrestricted access to Raffaelli's studio, and thereby to all of Raffaelli's film, negatives, slides and photographs. Worthington had repeatedly asked Raffaelli to donate a portion of his Hendrix photography to one Michael Ochs, who, according to Worthington, intended to open a museum in dedication to the late musician. Raffaelli repeatedly refused, and had never agreed to donate any of his works to Michael Ochs or any Jimi Hendrix museum. By the time Raffaelli discovered that some of his work was missing, in early 2006, he had lost all contact with Worthington. Thus, at this time, Raffaelli did not know if the work had been stolen or merely misplaced.

27.  In or about late 2009 or early 2010, Raffaelli learned that Michael Ochs had sold the Stolen Raffaelli Works to Getty Images for a substantial profit.

28.  Prior to this time, Raffaelli had no actual knowledge that his work had been stolen, that it had been taken by either Gold and Goldstein or Worthington, that it had come into the possession of Michael Ochs, or that Michael Ochs had sold the Stolen Raffaelli Works to Getty Images.

## GETTY IMAGES PURCHASES THE ARCHIVES

29.  Getty Images is a dealer of visual content, including rare and archival imagery. Either by way of acquisitions or through the work of its own photographers, Getty Images licenses imagery in over 100 countries, thereby making it one of the world's largest dealers of visual content.

30.  In addition, the Getty Images Gallery, one of London's largest and most influential photography galleries, showcases exhibitions taken from its archival libraries, which it also makes available for purchase as fine art prints in a variety of sizes and framing options.

31.  Raffaelli is informed and believes that, in or about February 2007, Getty Images purchased the Archives from Michael Ochs. In a press release about the transaction, Getty Images touted that "[m]usic enthusiasts, in particular, will be thrilled by the addition of this unique collection, which is arguably the best of its kind in the world." Plaintiff is further informed and believes that, in April 2007, approximately 15,000

HWARCZ, RIMBERG,
OYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

RAFFAELLI v. GETTY IMAGES

digitized works from the Archives were made available through Getty Images' website, www.gettyimages.com, and an additional 60,000 were said to be added on a rolling basis through 2007.

32. Plaintiff is informed and believes that, prior to its 2007 purchase of the Archives, Getty Images was informed by an industry insider that the Archives included stolen works. Despite this warning, and in total disregard for the consequences thereof, Getty Images purchased the Archives with knowledge that multiple images in the Archives were stolen.

33. Upon information and belief, a portion of the images in the Archives, as sold through www.gettyimages.com and www.gettyimagesgallery.com, are the Stolen Raffaelli Works. The Stolen Raffaelli Works are being copied, published, distributed, licensed, sold and/or publicly displayed without Raffaelli's consent and in violation of Raffaelli's copyright. Furthermore, Raffaelli is informed believes and thereupon alleges that the Getty Images Gallery showcases the Stolen Raffaelli Works as works of art in its gallery, and earns profits from the sale of prints of those images.

34. Furthermore, Raffaelli is informed, believes and thereupon alleges that Getty Images possesses additional Stolen Raffaelli Works currently not on display on www.gettyimages.com.

35. A number of the Stolen Raffaelli Works are distinct and identifiable as they consist, in part, of photographs of Hendrix taken in the two week period prior to the Hendrix's performance at the Waikiki Shell Auditorium and are substantially similar to, or are in fact the same as, some of the images Raffaelli ultimately selected to include in the *Jimi Hendrix – Electric Church – A Visual Experience* tour book.

36. Sometime after the 2007 purchase, upon information and belief, Getty Images was informed that the Archives included the Stolen Raffaelli Works. Then, in about 2010 or 2011, Raffaelli, through his agent, contacted Getty Images and informed Defendants that the Stolen Raffaelli Works belong to him and demanded their return. Despite this

1 knowledge, Getty Images continues to infringe Raffaelli's copyrights and refuses to
2 return the Stolen Raffaelli Works.

### FIRST CAUSE OF ACTION

(Copyright Infringement - 17 U.S.C. § 501 – Unpublished Works)

37. The allegations set forth in the above paragraphs, 1 through 36, are re-alleged and reincorporated by reference as if fully set forth below.

38. On December 29, 2011, Raffaelli submitted 17 separate applications for copyright registration of the unpublished Stolen Raffaelli Works. Attached as Exhibit "A" are true and correct copies of the U.S. Copyright Office Deposit Shipping Slips, listing the Title, Case Date, and Application Number ("Case/SR #") for each of the 17 applications. True and accurate copies of the Stolen Raffaelli Works with Getty Images corresponding Editorial Numbers assigned to each are attached hereto as Exhibit "B" and are incorporated herein by reference.

39. Raffaelli is the author of the unpublished Stolen Raffaelli Works, which to Raffaelli's knowledge at this time consist of over 360 images of Jimi Hendrix, including, but not limited to, group and solo images of Hendrix and his band members, bassist Noel Redding and drummer Mitch Mitchell; four (4) images of Jimmy Page; three (3) images of the Stones/Mick Jagger; one (1) image of Three Dog Night; two (2) images of Joni Mitchell; two (2) images of Creedence Clearwater Revival; four (4) images of Eric Burdon; and two (2) images of Blind Faith. *See* Exhibit B.

40. Since the creation of the unpublished Stolen Raffaelli Works, Raffaelli has been and remains the sole owner of all rights, title and interest in and to the copyright of the unpublished Stolen Raffaelli Works.

41. During the statutory period, Getty Images infringed Raffaelli's copyrights by copying, publishing, distributing, selling, licensing and/or publicly displaying the unpublished Stolen Raffaelli Works without Raffaelli's authorization or permission.

42. At the time Getty Images infringed Raffaelli's copyrights, Getty Images knew that the infringed works belonged to Raffaelli and that Getty Images did not have permission

to exploit Raffaelli's works. Prior to its purchase of the Archives, Getty Images was informed that the Archives included stolen works. Sometime after its purchase of the Archives, Getty Images was informed that it did not have valid title to the Stolen Raffaelli Works. Thereafter, Getty Images was again informed by Raffaelli's agent that the Stolen Raffaelli Works belonged to Raffaelli and Getty Images was not authorized to copy, publish, distribute, sell, license and/or otherwise publicly display the said works.

43.    Thus, Getty Images is on notice and knows that its acts constituted copyright infringement. Notwithstanding this knowledge, Getty Images continues to engage in copyright infringement.

44.    Raffaelli is informed, believes and thereupon alleges that Getty Images possesses additional unpublished Stolen Raffaelli Works currently not on display on www.gettyimages.com, and reserves the right to amend his complaint to assert copyright infringement on those currently undisclosed unpublished Stolen Raffaelli Works.

45.    As a result of its wrongful conduct, Getty Images is liable to Raffaelli for copyright infringement. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to harm to his artistic, professional and business reputation and goodwill.

46.    By reason of Getty Images' acts of infringement as alleged above, Raffaelli has suffered and will continue to suffer substantial damages to his business in an amount to be established at trial, as well as additional general and special damages in an amount to be established at trial.

47.    Due to its acts of copyright infringement as alleged herein, Getty Images has obtained direct and indirect profits it would not otherwise have realized but for its infringement of the Stolen Raffaelli Works. As such, Raffaelli is entitled to disgorgement from Getty Images of all profits directly and indirectly attributable to its infringement of the Stolen Raffaelli Works, in an amount to be established at trial.

48.    Raffaelli is informed and believes and thereon alleges that the above-described acts of copyright infringement were committed with knowledge of or reckless disregard

for his copyrights, subjecting Getty Images to liability for statutory damages pursuant to 17 U.S.C. Section 504(c), in the amount of up to one hundred fifty thousand dollars ($150,000) for each such act of infringement.

49. Further irreparable harm to Raffaelli is imminent as a result of Getty Images' conduct, and Raffaelli is without an adequate remedy at law. Raffaelli is entitled to an injunction restraining Getty Images from engaging in further such acts of copyright infringement.

50. In addition, given the numerous warnings and notices received by Getty Images about the Archives including stolen works and, in particular, including the Stolen Raffaelli Works, and Getty Images' continued infringement, Plaintiff seeks recovery punitive damages on the basis of Getty Images' willful and/or malicious conduct.

## SECOND CAUSE OF ACTION

(Copyright Infringement - 17 U.S.C. § 501)

51. The allegations set forth in the above paragraphs, 1 through 50, are re-alleged and reincorporated by reference as if fully set forth below.

52. Raffaelli brings a copyright infringement action for certain of the Stolen Raffaelli Works which were contained within previously published works and are protected by federal copyright. The copyright registrations for those works include: (1) K87780: Crucified female suspended above 4 seated males; (2) K87790: Young Male holding 6 young people in hand; and (3) K87792: Worm's eye view of standing male with view of 4 young people between his spread legs. In addition, the tour book entitled *Jimi Hendrix – Electric Church – A Visual Experience* containing certain of the Stolen Raffaelli Works was published with a copyright notice: "Copyright - 1969." See Exhibit B.

53. Raffaelli is the sole owner of all rights, title and interest in and to the copyright of the Stolen Raffaelli Works which were contained within previously published works.

54. During the statutory period, Getty Images infringed Raffaelli's copyrights by copying, publishing, distributing, selling, licensing and/or publicly displaying the Stolen

Raffaelli Works contained within previously published works without Raffaelli's authorization or permission.

55.   At the time Getty Images infringed Raffaelli's copyrights, Getty Images knew that the infringed works belonged to Raffaelli and that Getty Images did not have permission to exploit Raffaelli's works. Prior to its purchase of the Archives, Getty Images was informed that the Archives included stolen works. Sometime after its purchase of the Archives, Getty Images was informed that it did not have valid title to the Stolen Raffaelli Works. Thereafter, Getty Images was again informed by Raffaelli's agent that the Stolen Raffaelli Works belonged to Raffaelli and Getty Images was not authorized to copy, publish, distribute, sell, license and/or otherwise publicly display the said works.

56.   Thus, Getty Images is on notice and knows that its acts constituted copyright infringement. Notwithstanding this knowledge, Getty Images continues to engage in copyright infringement.

57.   Raffaelli is informed, believes and thereupon alleges that Getty Images possesses additional Stolen Raffaelli Works which may have been contained in previously published works, and reserves the right to amend his complaint to assert copyright infringement on those currently undisclosed Stolen Raffaelli Works.

58.   As a result of its wrongful conduct, Getty Images is liable to Raffaelli for copyright infringement. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to harm to his artistic, professional and business reputation and goodwill.

59.   By reason of Getty Images' acts of infringement as alleged above, Raffaelli has suffered and will continue to suffer substantial damages to his business in an amount to be established at trial, as well as additional general and special damages in an amount to be established at trial.

60.   Due to its acts of copyright infringement as alleged herein, Getty Images has obtained direct and indirect profits it would not otherwise have realized but for its infringement of the Stolen Raffaelli Works. As such, Raffaelli is entitled to disgorgement

from Getty Images of all profits directly and indirectly attributable to its infringement of the Stolen Raffaelli Works, in an amount to be established at trial.

61. Raffaelli is informed and believes and thereon alleges that the above-described acts of copyright infringement were committed with knowledge of or reckless disregard for his copyrights, subjecting Getty Images to liability for statutory damages pursuant to 17 U.S.C. Section 504(c), in the amount of up to one hundred fifty thousand dollars ($150,000) for each such act of infringement.

62. Further irreparable harm to Raffaelli is imminent as a result of Getty Images' conduct, and Raffaelli is without an adequate remedy at law. Raffaelli is entitled to an injunction restraining Getty Images from engaging in further such acts of copyright infringement.

63. In addition, given the numerous warnings and notices received by Getty Images about the Archives including stolen works and, in particular, including the Stolen Raffaelli Works, and Getty Images' continued infringement, Plaintiff seeks recovery punitive damages on the basis of Getty Images' willful and/or malicious conduct.

### THIRD CAUSE OF ACTION

#### Replevin

64. The allegations set forth in the above paragraphs, 1 through 63, are re-alleged and reincorporated by reference as if fully set forth below.

65. The Stolen Raffaelli Works qualify as "fine art" as defined in paragraph (1) of subdivision (d) of Section 982 of the Civil Code.

66. Getty Images on its own, and/or through Getty Images Gallery, is a dealer or gallery subject to Civil Code Section 338(C)(3).

67. Plaintiff has the right to immediate and exclusive possession of the Stolen Raffaelli Works.

68. The Stolen Raffaelli Works are currently in the possession of Getty Images without Plaintiff's consent.

69. Plaintiff has demanded the return of the Stolen Raffaelli Works and Getty Images has refused.

70. As a result, Raffaelli seeks the immediate return of the Stolen Raffaelli Works.

## FORTH CAUSE OF ACTION

### Conversion

71. The allegations set forth in the above paragraphs, 1 through 70, are re-alleged and reincorporated by reference as if fully set forth below.

72. The Stolen Raffaelli Works qualify as "fine art" as defined in paragraph (1) of subdivision (d) of Section 982 of the Civil Code.

73. Getty Images on its own, and/or through Getty Images Gallery, is a dealer or gallery subject to Civil Code Section 338(C)(3).

74. Plaintiff owned or possessed or had a right to possess the Stolen Raffaelli Works.

75. Defendants intentionally and substantially interfered with Plaintiff's rights by taking possession of the Stolen Raffaelli Works, preventing Plaintiff from having access to the Stolen Raffaelli Works and/or refusing to return the Stolen Raffaelli Works after Plaintiff demanded their return.

76. Getty Images converted and appropriated the Stolen Raffaelli Works to their own use in complete disregard and derogation of Raffaelli's rights, title and interest.

77. At no time did Plaintiff consent to Getty Images taking possession of the Stolen Raffaelli Works.

78. As a result of Defendants' wrongful conduct, Plaintiff seeks the immediate return of the Stolen Raffaelli Works.

## FIFTH CAUSE OF ACTION

### Damages under Cal. Penal Code § 496

79. The allegations set forth in the above paragraphs, 1 through 78, are re-alleged and reincorporated by reference as if fully set forth below.

80. Getty Images does not have good title to the Stolen Raffaelli Works.

81. Prior to purchasing the Archives, Getty Images was placed on notice that the Archives included stolen works. Notwithstanding this knowledge, Getty Images purchased the Archives.

82. Thereafter, Getty Images was placed on notice that the Archives contained Stolen Raffaelli Works, but Getty Images refused to return the Stolen Raffaelli Works.

83. Getty Images has unlawfully refused Plaintiff's demand for return of the Stolen Raffaelli Works in violation of California Penal Code Section 496.

84. Getty Images knows that the Stolen Raffaelli Works were stolen and Defendants have no viable legal defense to Plaintiff's claim to the return of the Stolen Raffaelli Works.

85. Plaintiff has been damaged by the unlawful withholding of his property, and is therefore entitled under Penal Code Section 496(c) to a judgment against Defendants for three times the amount of its actual damages, which amount shall be proven at trial.

## SIXTH CAUSE OF ACTION

### Declaratory Judgment

86. The allegations set forth in the above paragraphs, 1 through 85, are re-alleged and reincorporated by reference as if fully set forth below.

87. The Stolen Raffaelli Works in the possession of the Getty were unlawfully taken and never returned to Raffaelli.

88. Getty Images does not have good title to the Stolen Raffaelli Works currently in their possession and control.

89. Plaintiff has demanded the return of the Stolen Raffaelli Works, and Getty Images has refused.

90. Plaintiff is entitled to a judgment declaring that it is the rightful owner of the Stolen Raffaelli Works, and that Getty Images has no right, title and interest in them.

///

///

///

## Prayer for Relief

WHEREFORE, Plaintiff prays that judgment be entered against Defendants as follows:

(a) For a preliminary and permanent injunction enjoining and restraining Defendants and their officers, agents, employees and representatives, and all persons acting in concert with them, from reproducing, adapting and displaying promoting, offering for sale and/or selling, advertising about or distributing the Stolen Raffaelli Works;

(b) For damages permitted by federal copyright law, including without limitation, Plaintiff's actual damages and Defendants' profits, plus interest, as well as all statutory and punitive damages permitted;

(c) For an order directing the Defendants to immediately deliver the original works to Plaintiff;

(d) For treble damages pursuant to Cal. Penal Code § 496(c) in an amount to be established at trial;

(e) For attorneys' fees pursuant to Cal Penal Code §496 (c);

(f) For an award to Plaintiff for the costs and disbursements of this action; and

(g) For such other and further relief as this Court deems just and proper.

Dated: April 25, 2012

SCHWARCZ, RIMBERG, BOYD & RADER LLP

By: _____
Kathryn Lee Boyd
Darcy R. Harris
Sherli Shamtoub

Attorneys for Plaintiff RON RAFFAELLI

## DEMAND FOR JURY TRIAL

Plaintiff RON RAFFAELLI hereby respectfully demands a trial by jury for all claims and issues raised in his Complaint to which he is or may be entitled to a jury trial.

Dated: April 25, 2012

SCHWARCZ, RIMBERG, BOYD & RADER LLP

By: _____
Kathryn Lee Boyd
Darcy R. Harris
Sherli Shamtoub

Attorneys for Plaintiff RON RAFFAELLI